UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA BORTNER,<br>    Petitioner, | :<br>:<br>: |
| v. | : Case No. 3:24-cv-281 (VAB) |
| STOVER,<br>    Respondent. | :<br>:<br>: |

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Barbara Bortner ("Petitioner"), filed this petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the calculation of her good time credits and her First Step Act ("FSA") Time Credits. The Respondent contends that Ms. Bortner's time credits have been properly calculated and applied.

For the following reasons, the petition for writ of habeas corpus is **DENIED**.

I.  **BACKGROUND**

On October 14, 2021, in the United States District Court for the Western District of Wisconsin, Ms. Bortner plead guilty to charges of fraud by wire, radio, or television and attempt to evade or defeat tax. *See* Resp't's Mem. Ex. A, ECF No. 16-1. On May 4, 2022, she received a sentence of a term of imprisonment of 42 months, followed by a three-year term of supervised release, *id.*, and later had to self-surrender to FCI Danbury on August 2, 2022. *Id.* On February 29, 2024, Ms. Bortner received a modified sentence, a term of imprisonment of 41 months. *Id.* On May 20, 2024, Ms. Bortner was transferred to a Residential Reentry Center ("RRC") in Janesville, Wisconsin. *See* Resp't's Mem. Ex. B, ECF No. 16-2.

On February 29, 2024, Ms. Bortner began this action by filing the underlying petition. In

it, she argues that the Bureau of Prisons ("BOP") has miscalculated her good time credit but does not identify any specific error. She also argues that the BOP has improperly calculated her First Step Act time credits by failing to award her 15 days of time credits for every 30 days of programming commencing on her arrival at FCI Danbury. Finally, she challenges the timing and location of her community placement under the Second Chance Act.

## II. STANDARD OF REVIEW

Section 2241 affords relief only if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petition filed under Section 2241 may be used to challenge the execution of a prison sentence. Thus, section 2241 petitions are appropriately used to challenge conditions of confinement or sentence calculations. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006).

## III. DISCUSSION

### A. The Availability of First Step Act Time Credits

On December 21, 2018, Congress enacted the First Step Act ("FSA"), which was intended to encourage federal inmates to participate in evidence-based recidivism reduction programs ("EBRRs") and other productive activities ("PAs"). Inmates earn time credits upon successful participation in these activities and the time credits qualify the inmates for early release from custody. *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A).

Application of the time credits will enable an inmate to be transferred sooner to prerelease custody, either in a residential reentry center or on home confinement, or supervised release. *See* 18 U.S.C. § 3624(g). Inmates classified as minimum or low risk of recidivism are eligible to earn either 10 or 15 days of credit for every 30 days of successful participation in

EBRRs or PAs. *See* 18 U.S.C. § 3632(d)(4)(A). If the inmate's sentence includes a period of supervised release, "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months." 18 U.S.C. § 3624(g)(3).

Eligible inmates assessed as minimum or low risk of recidivism earn 10 days of time credits for every 30 days of successful participation in the programs. 18 U.S.C. § 3632(d)(4)(A)(i). If an eligible inmate is determined to be a minimum or low risk of recidivism for two consecutive assessments, that inmate earns 15 days of time credits for every 30 days of successful participation in the programs. 18 U.S.C. § 3632(d)(4)(A)(ii). Although an inmate accumulates FSA time credits each month, she is eligible to have those credits applied only when she has "earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A); *see also Pujols v. Stover*, No. 3:23-cv-564(SVN), 2023 WL 4551423, at *2 (D. Conn. July 14, 2023) (collecting cases). If a prisoner is sentenced to a term of imprisonment of less than one year, the recidivism assessments are conducted every 90 days. 28 C.F.R. § 524.11(a).

Ms. Bortner argues that the BOP improperly calculated her FSA time credits because she was not awarded 15 days of credits for every 30 days of programming beginning on the date of her arrival at FCI Danbury.

But the statute specifically states that an inmate may be credited with 15 days of time credits for every 30 days of programming, only after that inmate is determined to be a minimum or low risk of recidivism for two consecutive assessments. 18 U.S.C. § 3632(d)(4). Thus, it is not correct that the FSA requires that she receive a credit of 15 days for every 30 days of

3

programming commencing on her arrival at FCI Danbury. Instead, and BOP records show, Ms. Bortner's entitlement to receive 15 days of time credits for every 30 days of programming, after her second assessment as provided in the statute. *See* Resp't's Mem. Ex. D, ECF No. 16-4; 18 U.S.C. § 3632(d)(4)(a) (in addition to the 10 days of time credits for every 30 days, "[a] prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation").

Accordingly, the petition is denied on this ground.

### B. The Availability of Good Time Credits

The FSA amended the statute under which the BOP applied good time credit, 18 U.S.C. § 3624(b). Now, the BOP applies good time credit "of up to 54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b).

Ms. Bortner's sentence is 41 months, or 3 years and 5 months. BOP records show that she was awarded 184 days of good conduct time, 54 days for each of the three full years and 22 days, a pro rata share for the remaining five-month period. *See* Resp't's Mem. Ex. A, ECF No. 16-3. Thus, Ms. Bortner received the maximum amount of good time credit permitted under the statute and she has not identified any error in that specific application of the law.

Accordingly, the petition is denied on this ground.

### C. The Issue of A Residential Reentry Center Placement

The Second Chance Act of 2007 modified 18 U.S.C. § 3624(c), to provides that a federal inmate may serve up to one year of her term of imprisonment in pre-release custody, such as home confinement, a community correctional facility, or a residential re-entry center. *See United*

*States v. Tagliaferro*, No. 19-CR-472(LAP), 2024 WL 3567275, at *1 (S.D.N.Y. July 29, 2024).

Ms. Bortner challenges the timing and placement in a RRC as violating the Second Chance Act. She asks the Court to order BOP to immediately release her to home confinement. *See* ECF No. 1 at 8.

The BOP, however, "retains discretion under the Second Chance Act to decide whether and when an inmate should be placed" in pre-release custody." *Id.* (quoting *United States v. Accardi*, No. 11 CR 12(RMB), 2013 WL 1903559, at *1 (S.D.N.Y. May 7, 2013) (internal quotation marks omitted)); *see also* 18 U.S.C. § 3624(c)(4) ("Nothing in the subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under [18 U.S.C.] section 3621.").

Indeed, district court within the Second Circuit considering similar claims have uniformly held that decisions regarding pre-release custody rest within the discretion of the BOP and that they lack authority to order a transfer to pre-release custody. *See*, *e.g.*, *Fournier v. Zixkefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009) ("the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed in an RRC." (internal quotation marks omitted)); *see also, e.g., United States v. Norville,* No. 10 CR 1046(VM), 2022 WL 110291, at *1 (S.D.N.Y. Jan. 12, 2022) ("even when the Second Chance Act allow for RRC placement, the statute does not require it and the ultimate decision whether to move an inmate to an RRC lies with the BOP"); *United States v. Richiez-Castillo*, No. 00-CR-54-RJA, 2021 WL 1746426, at *1 (W.D.N.Y. May 4, 2021) ("[n]either the Second Chance Act, the First Step Act, nor the CARES Act give district courts authority to determine a prisoner's placement; they 'merely give eligible inmates the possibility to be considered [by the BOP] for home

5

confinement or halfway house placement'" (citation omitted)); *Sclafani v. Kane*, No. 20-cv-0463(EK)(VMS), 2020 WL 4676414, at *3 (E.D.N.Y. Aug. 12, 2020) ("Although Congress enacted the Second Chance Act to improve prisoner reentry into society and reduce recidivism, . . . the Act did not alter the BOP's discretion and did not give prisoners an enforceable liberty interest in pre-release home confinement" (citations omitted)); *United States v. Brisson*, No. 5:13-cr-34, 2015 WL 62772, at *4 (D. Vt. Jan. 5, 2015) ("the Second Chance Act does not apply to the court but is, instead, administered by the Bureau of Prisons"). Thus, this Court lacks authority under the Second Chance Act to order Ms. Bortner transferred to home confinement.

Accordingly, the petition is denied on this ground.

### IV. CONCLUSION

The petition for writ of habeas corpus is **DENIED**.

An appeal of this order will not be taken in good faith, and thus no certificate of appealability will issue.

The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED** this 31st day of July 2024 at New Haven, Connecticut.

/s/ Victor A. Bolden

Victor A. Bolden
United States District Judge